IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMY M. NELSON,                                    07-CV-6043-BR

            Plaintiff,                            OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

            Defendant.


KATHRYN TASSINARI
BRENT WELLS
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541)686-1969

            Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1158

1   -  OPINION AND ORDER

**MICHAEL McGAUGHRAN**
Office of the General Counsel
**DAPHNE BANAY**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
(206) 615-2113

      Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Amy M. Nelson seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he found Nelson ineligible for Supplemental Security Income (SSI) payments under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

      Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.


## ADMINISTRATIVE HISTORY

      Nelson filed her application for SSI on January 26, 2004. Tr. 62-64.[1] The application was denied initially and on

---

      [1] Citations to the official transcript of record filed by the Commissioner on April 5, 2007, are referred to as "Tr."

2   -   OPINION AND ORDER

reconsideration.  Tr. 32, 35-37, 40-44.  An Administrative Law
Judge (ALJ) held a hearing on July 17, 2006.  Tr. 402-58.  Nelson
was represented by an attorney.  Tr. 47, 402.  Nelson; lay
witness Tony Nelson, Nelson's father; and a vocational expert
(VE) testified at the hearing.  Tr. 408-58.  The ALJ issued a
decision on September 26, 2006, in which he found Nelson is not
disabled and, therefore, is not entitled to benefits.  Tr. 22-31.

    On January 4, 2007, the Appeals Council considered
additional evidence submitted by Nelson but denied her request
for review.  Tr. 6-9.  The ALJ's decision, therefore, became the
final decision of the Commissioner on January 4, 2007.


## BACKGROUND

    Nelson, a high-school graduate, was 22 years old at the time
of the hearing before the ALJ.  Tr. 77, 408.  She briefly
attended Job Corps and vocational rehabilitation after high
school, but she did not receive substantial training in either
program.  Tr. 128-50, 397, 417, 419-20.  She has worked as a
landscape specialist and as a hand packager in a meat-packing
plant.  Tr. 72, 81, 100-02, 123.

    At about age nine, Nelson began to suffer from anxiety and
depression.  Tr. 397.  In her early teens, Nelson began to have
trouble in social situations, to get poor grades in school, and
to require some counseling.  Tr. 209-10, 254, 318, 320-22, 386,

3  -  OPINION AND ORDER

397-98.  She struggled to focus in school and needed special-
education classes in math.  Tr. 209-10.  In addition, she began
experimenting with drugs and alcohol.  Tr. 320-22, 324-25.  At
age 18, Nelson was diagnosed as bipolar after suffering from
manic symptoms swinging from periods of hyperactivity and
insomnia to periods of fatigue and depression.  Tr. 283, 315,
379, 386.  Nelson's periods of depression have occasionally been
coupled with suicidal ideation.  Tr. 146, 366.  After graduating
from high school, Nelson continued to live with her parents and
did not maintain gainful employment.  Tr. 108-115, 397.  She
did not complete vocational rehabilitation or Job Corps training.
Tr. 115, 128-50.

In August 2004 after an extended manic period of three to
five days during which she slept little if at all, Nelson was
picked up by police and hospitalized at Good Samaritan Medical
Center.  Tr. 311.  She indicated she was having hallucinations
and felt there were people chasing her and trying to hurt her.
Tr. 311.  Nelson spent about two weeks in the hospital receiving
treatment and counseling and was eventually released to the care
of her parents.  Tr. 315-26.  Nelson has lived under the close
supervision of her parents for most of her adolescent and adult
life.  Tr. 321, 397, 434-43.

Nelson has been diagnosed with major depressive disorder,
anxiety disorder, math-based learning disorder, borderline

4   -   OPINION AND ORDER

intellectual functioning, and polysubstance abuse.  Tr. 211-12, 270-83, 315-60, 401.  She initially alleged a disability onset date of January 1, 1998, and then amended her disability onset date at the hearing before the ALJ to January 16, 2004.  Tr. 62-64, 407.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial

6   -   OPINION AND ORDER

gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§ 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of a
number of listed impairments the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  *Stout*, 454
F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iii).  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite her limitations.  20 C.F.R.
§ 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete

incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Nelson has not engaged in substantial gainful activity since her alleged onset date. Tr. 24.

At Step Two, the ALJ found Nelson's bipolar disorder and polysubstance abuse are severe impairments.  Tr.24-25.

At Step Three, the ALJ found Nelson's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ then assessed Nelson's RFC and found she does not have any physical limitations and, therefore, is able to perform very heavy work.  Tr. 26.  The ALJ found Nelson is "able to lift 100 pounds or more occasionally, 50 pounds or more frequently, stand or walk for about six hours, and sit for about six hours during an eight hour work day."  Tr. 26.  He also found Nelson can perform only simple, repetitive job duties in a structured setting due to her mental impairments.  Tr. 26.

At Step Four, the ALJ found Nelson did not have any past relevant work.  Tr. 29.  Thus, the ALJ proceeded to Step Five.

At Step Five, the ALJ found Nelson could perform jobs that exist in significant numbers in the national economy in light of her age, education, work experience, RFC, and the testimony of the VE.  Tr. 30.  Accordingly, the ALJ found Nelson is not disabled and, therefore, is not entitled to benefits.  Tr. 30.

## DISCUSSION

Nelson contends the ALJ erred when he (1) found Nelson's testimony concerning "the intensity, persistence and limiting effects" of her symptoms "not entirely credible"; (2) rejected the lay testimony of witness Tony Nelson and the statements of Gail Nelson; and (3) failed to give appropriate weight to the medical opinions of Jill Yarwood, R.N., M.N., P.M.H.N.P., Nelson's treating nurse practitioner, and Gary Bredeweg, L.C.S.W., one of Nelson's therapists.  Nelson also contends this Court should consider the new evidence Nelson submitted to the Appeals Council when it reviewed the Commissioner's decision to deny benefits to Nelson.

**I.   Lay Witnesses.**

**A.   Amy M. Nelson.**

Nelson contends the ALJ erred when he found Nelson's testimony concerning "the intensity, persistence and limiting effects" of her symptoms is "not entirely credible."  Tr. 26.

The test for rejecting a claimant's subjective symptom testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The *Cotton* test establishes two basic requirements for a claimant to present credible symptom testimony:  She must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could

reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407. The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General assertions that the claimant's testimony is not credible are insufficient. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ determined Nelson has "medically determinable impairments [that] could reasonably be expected to produce the alleged symptoms." Tr. 26. The ALJ's conclusion is supported by substantial evidence in the record, and, therefore, the Court finds Nelson has satisfied the *Cotton* test. Because the ALJ did not determine Nelson is malingering, the ALJ must provide clear and convincing reasons for rejecting Nelson's subjective symptom testimony. *Lester*, 81 F.3d at 834.

### 1. Nelson's Testimony.

Nelson testified the medication she takes seems to have stabilized her depression and mood swings, but she continues to

11  -  OPINION AND ORDER

struggle with fatigue, with the inability to concentrate, and with remembering and following directions.  Tr. 425-30.  She attested she needs help with basic daily activities such as balancing a checkbook and remembering to take a shower and to take her medication.  Tr. 428-29.  Nelson also testified she was fired from her job as a meat packager because she was "in a manic phase," could not stay on task, and was easily distracted.  Tr. 412.  She testified she had problems interacting socially with others outside of her home, which contributed to her failed attempt to complete Job Corps training and her brief attempt to live with roommates away from her parents' home.  Tr. 420-22.  Since her hospitalization in 2004, she stated she had quit using marijuana and only drank occasionally.  Tr. 422-23.

**2.  ALJ's Decision.**

The ALJ discredited Nelson's symptom testimony on the ground that she had shown recent improvement and her condition had stabilized as a result of her medication.  Tr. 26.  The ALJ concluded these facts demonstrate Nelson's "lack of motivation and initiative is not an element of her bipolar disorder."  Tr. 26.

Although the record reflects Nelson has become more stable while on medication, the ALJ's determination that Nelson's lack of motivation and interest in pursuing goals is not a part of her disorder is unsupported by the record.  Mental Health Specialist

12  -  OPINION AND ORDER

Carman MacMillan noted the symptoms of Nelson's disorder include
fatigue, depressed mood, and anhedonia, which "interfere with her
ability to keep a job." Tr. 381. Gary Bredeweg, Nelson's social
worker, also noted Nelson's energy loss is a symptom of her
bipolar disorder and depression. Tr. 392. Jill Yarwood,
Nelson's treating nurse practitioner, concluded Nelson still has
"significant life dysfunction with her disorder" and that her
stability is "intermittent." Tr. 366. After performing a mental
and psychological examination of Nelson and diagnosing Nelson
with Major Depressive Disorder and aspects of narcissistic
personality, Carol Greenough, Ph.D., concluded Nelson would need
counseling to improve her motivation, to improve her functioning
in relationships, and to adjust to the workplace. Tr. 212.
Thus, despite Nelson's testimony that she has recently been
stable while at home and on medication, the record before the ALJ
did not support the ALJ's conclusion that Nelson's lack of
motivation or interest in pursuing goals is unrelated to her
bipolar disorder.

        The ALJ also discredits Nelson on the ground that she
made inconsistent statements as to the reason for her failure to
complete Job Corps training. Tr. 27. Nelson testified at the
hearing that she left the Job Corps because she was having
trouble in her relationships with her roommates. Tr. 27, 420.
The ALJ, however, noted Nelson indicated when she was interviewed

at Good Samaritan Medical Center in August 2004 that she was kicked out of the Job Corps because of ongoing issues with drugs and alcohol.  Tr. 27, 321.  The Court notes the interview took place two days after Nelson was committed to the hospital for a manic episode in which she did not sleep for three to five days. Tr. 311, 320.  Terry Beckett, M.A., who interviewed Nelson, noted at the time that Nelson was "quite disoriented and quite confused and disorganized in her thinking processes. . . . speaking on one topic and jump[ing] to something totally unrelated. . . .  [S]he is having a most difficult time staying on track with any questions asked at this time."  Tr. 320-21.  Moreover, the record is replete with references to Nelson's inability to recount her history correctly, and her mother would often accompany Nelson to appointments to help accurately recount her history.  Tr. 221, 234, 245, 318, 350, 372, 374-75, 377, 392, 434.  The Court, therefore, does not find Nelson's statements during the August 2004 interview are clear and convincing reasons for rejecting Nelson's entire testimony regarding the symptoms she suffers from as a result of her impairments.

The ALJ also discredited Nelson's testimony on the ground that Nelson exhibits "manipulative behavior."  Tr. 29. The ALJ found Nelson presents herself in two different ways:  In clinical and treatment settings she is pleasant and social, but "when seeking support for her disability claim" she presents as

unable to socialize.  Tr. 29.  The ALJ points to treatment notes
from Nelson's commitment at Good Samaritan in which she is
described as "social" with staff and playing games with her
peers.  Tr. 29, 331-34.  As noted, however, the ALJ did not
conclude Nelson was malingering.  In fact, the ALJ agreed with
the conclusion of Disability Determination Services (DDS)[2] that
Nelson could only work in a job that did not involve more than
occasional contact with the general public because she is not
"socially responsive," and the ALJ later included that limitation
in his hypothetical to the VE.  Tr. 29, 286, 449.  Moreover, the
records from Good Samaritan, in spite of Nelson's cooperation and
socialization with staff and peers, indicate she had to be
transferred to a different ward because she was afraid of two of
her peers.  Tr. 355.  Those records also indicate Nelson was
sleepy, preoccupied, and distracted during some interactions with
staff and peers.  Tr. 349, 352.  The record as a whole supports
Nelson's testimony that she struggles with social unrespon-
siveness as a result of her bipolar disorder.  Tr. 112, 115, 123,
285-86, 366, 392.  For example, her father, Tony Nelson,
testified Nelson relates well at times with the few friends she
has and yet she may go for weeks or months without contacting

---

[2] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R.
§ 416.903.

them.  Tr. 442.  The record, therefore, does not support the ALJ's conclusion that Nelson does not suffer from some dysfunction as a result of her impairment or that she purposefully presents in two different ways merely to obtain SSI benefits.

The ALJ also found Nelson's request of Gary Bredeweg, her social worker, to consider the possibility that she suffers from PTSD as a result of being raped when she was 18 years old is evidence of Nelson's manipulative character.  Tr. 29.  In addition, the ALJ noted Bredeweg opined one of Nelson's motivations for considering such a diagnosis was to provide more information for her Social Security hearing.  Tr. 394.  The Court, however, does not find the fact that Nelson sought medical evaluations for her Social Security hearing constitutes manipulation or clear and convincing grounds for rejecting her testimony.

Thus, on this record, the Court concludes the ALJ erred because he did not provide clear and convincing reasons supported by substantial evidence in the record for rejecting Nelson's testimony regarding the "intensity, persistence and limiting effects" of her symptoms.

**B.  Tony and Gail Nelson.**

Nelson also contends the ALJ erred when he concluded the testimony of Tony Nelson and the statements of Gail Nelson are

16  -  OPINION AND ORDER

deserving of "some but not great weight since their observations support a finding of mental impairments but are not necessarily consistent with disability." Tr. 28. Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

### 1. Tony Nelson.

Tony Nelson, Nelson's father, testified at the hearing before the ALJ that he and Nelson's mother, Gail Nelson, consistently have to direct, monitor, and encourage Nelson to perform basic daily activities such as washing dishes, taking showers, and returning telephone calls. Tr. 433-34. Tony Nelson testified Nelson has "zero motivation" despite the fact that Nelson's medication has helped to eliminate her manic episodes. Tr. 432, 434. He also testified he and his wife have not been able to establish a "normal" sleep routine for Nelson despite their efforts and have been unsuccessful in getting Nelson to meet basic expectations such as returning telephone calls or making appointments. Tr. 434-35.

### 2. Gail Nelson.

In a Third Party Adult Function Report on March 22, 2004, and in a Disability Report on September 25, 2004, Gail Nelson, Nelson's mother, stated Nelson lives under her care, and

she spends a lot of time with her daughter.  Tr. 108-16, 151-57.
She noted Nelson requires repeated oral and often written
instruction and encouragement to ensure she completes basic
tasks.  Tr. 110, 151, 155.  She stated this stems from Nelson's
difficulty in understanding and following instructions.  Tr. 113.
She also stated Nelson is incapable of managing money and
requires help to monitor her expenditures.  Tr. 111.  She
reported Nelson has difficulty establishing work-related
relationships because she does not make eye contact, is unsure
of herself in making decisions, and struggles to maintain a
schedule.  Tr. 115.

> **3.  ALJ's Decision.**

When determining Nelson's RFC, the ALJ assigned "some
but not great weight" to the testimony and statements of Nelson's
parents "since their observations support a finding of mental
impairments but are not necessarily consistent with disability."
Tr. 28.  Although nonmedical testimony from lay witnesses "cannot
establish the existence of a medically determinable impairment[,]
. . . [it] may provide insight into the severity of the
impairment(s) and how it affects the individual's ability to
function."  SSR 06-03p, at *2.  Here the ALJ considered the lay-
witness testimony and statements when he determined Nelson has
mental impairments, but he did not consider their testimony or
statements when he determined the severity of Nelson's

18  -  OPINION AND ORDER

disability.  Tr. 28.  Thus, the ALJ's reason for assigning the testimony and statements of Nelson's parents little or no weight when determining the severity of Nelson's impairments and "how it affects [Nelson's] ability to function" does not comply with the requirements of SSR 06-03p.  Moreover, instead of providing specific reasons for disregarding the testimony of Tony Nelson or the statements of Gail Nelson, the ALJ only provided a general justification for not considering their descriptions of Nelson's functional impairments.  As noted, a general justification is not sufficient because the ALJ is required to consider lay-witness testimony pertaining to the severity of a claimant's functional limitations unless he provides reasons germane to the witness for not doing so.

Accordingly, the Court finds the ALJ erred when he failed to consider the testimony and written statements of Nelson's parents pertaining to the severity of Nelson's impairments and her functional limitations because the ALJ did not provide legally sufficient reasons specifically germane to each lay witness for doing so.  *See Lewis*, 236 F.3d at 511.

**II.  Medical Sources.**

Nelson contends the ALJ erred when he failed to give appropriate weight to the opinions of Jill Yarwood, Nelson's treating nurse practitioner, and Gary Bredeweg, one of Nelson's therapists.  Nelson asserts the ALJ would have found her to

be disabled if the ALJ had properly weighed their medical
opinions.

Medical sources are divided into two categories:
"acceptable" and "not acceptable." 20 C.F.R. § 416.902.
Acceptable medical sources include licensed physicians and
psychologists. § 416.902. Medical sources classified as "not
acceptable" include, but are not limited to, nurse practitioners,
therapists, licensed clinical social workers, and chiropractors.
SSR 06-03p, at *2. The Social Security Administration notes:

> With the growth of managed health care in
> recent years and the emphasis on containing
> medical costs, medical sources who are not
> acceptable medical sources, such as nurse
> practitioners, physician assistants, and
> licensed clinical social workers, have
> increasingly assumed a greater percentage of
> the treatment and evaluation functions
> previously handled primarily by physicians
> and psychologists. Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity and
> functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3. Factors the ALJ should consider when
determining the weight to give an opinion from those "important"
sources include: How long the source has known the claimant and
how often the source has seen the claimant; the consistency of
the source's opinion with other evidence in the record; the
relevance of the source's opinion; the quality of the source's
explanation of his opinion; and the source's training and

20  -  OPINION AND ORDER

expertise.  SSR 06-03p, at *4.  On the basis of the particular
facts and the above factors, the ALJ may assign a medical opinion
from a source that is not an accepted medical source either
greater or lesser weight than that of an accepted medical source.
SSR 06-03p, at *5-*6.  The ALJ, however, must explain the weight
assigned to such sources to such an extent that a claimant or
subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,
at *6.

### A.   Jill Yarwood.

Yarwood counseled Nelson on referral from Good Samaritan
Hospital and assisted Nelson's primary-care physician in the
management of the medications used to treat Nelson's bipolar
disorder.  Tr. 366-78.  Yarwood saw Nelson at least ten times
over more than 16 months.  Tr. 366-78.  In her opinion letter
dated February 16, 2006, Yarwood noted Nelson's diagnosis of
bipolar disorder and concluded Nelson

> has not had successful long-term employment
> relationships.  She has significant life
> dysfunction with her disorder. . . .  She has
> had intermittent stability on [her] medi-
> cations.  Suicidality is a chief concern
> during her depressed cycles.  Her presenta-
> tion is complex and prevalent in all aspects
> of her life.  She is unable to perform work
> related activities such as understanding and
> remembering conversations or instructions,
> [and] social interactions under stress are
> marginal.  She has her mother as a support
> person and there are frequesnt interventions
> necessary. . . .  It is my professional
> opinion that Amy is unable to participate in
> gainful employment and will require more than

> a year to reach stability.  At that time she
> may be able to perform non-stressful, routine
> work.

Tr. 366.

The ALJ gave little weight to Yarwood's opinion.  Tr. 27-28.
The ALJ found Yarwood's opinion from February 16, 2006, was
inconsistent with her treatment notes, which indicate Nelson
improved while taking her medication.  Tr. 27-28.  Although
Yarwood's treatment notes reflect Nelson's improved stability
while Yarwood monitored Nelson's transition from Lithium to
Abilify, those notes do not conflict with Yarwood's opinion that
Nelson's stability is based on her consistent and continued use
of medication and on Nelson's refuge in the safe, nonstressful
environment of her parents' home.  Tr. 367-74.  For example,
Yarwood's notes qualify Nelson's stability as "functional within
her home" and identify Nelson's "mild agoraphobia."  Tr. 369-70.
Yarwood's notes also reflect Nelson's fluctuating self-reports of
good and bad days.  Tr. 367-74.  In addition, Yarwood makes
repeated references to Nelson's continued impairments of memory,
judgment, concentration, and insight.  Tr. 370, 372, 374.  The
ALJ does not provide a basis for his conclusion that Nelson's
improved stability on medication contradicts Yarwood's opinions
regarding other important factors contributing to Nelson's
stability and the functional limitations of her memory and
comprehension as they relate to the skills necessary to maintain

22  -  OPINION AND ORDER

employment.

The ALJ also notes Yarwood's conclusions are based primarily on Nelson's self-reporting and finds Yarwood's examinations are "superficial." Tr. 28. Yarwood's notes, however, indicate she reviewed Nelson's medical, family, social, educational, and occupational history and tested her memory, abstract thought ability, and math and spelling skills. Tr. 376-78. Moreover, Yarwood's opinion is based on her expertise in mental health and on a long history of working with Nelson and her mother. Tr. 366-78. To a certain extent, all mental-health examinations rely on patient self-reporting, and, therefore, that fact alone is not sufficient to discredit Yarwood's opinion.

Although the ALJ also found Dr. Greenough's conclusions based on "actual testing contradict[] the extreme limitations in [Yarwood's] letter," the ALJ did not identify those specific conclusions. Tr. 28. In February 2004 prior to Nelson's hospitalization at Good Samaritan, Dr. Greenough performed five tests in a single examination of Nelson to assess her intellectual abilities and found Nelson performed at a fifth-grade level in math. Tr. 209-214. She stated, "It is my impression that [Nelson] still experiences sufficient depression that it is hard to get energy to think her way around difficult tasks. It is unclear if this would be a problem if her depression was completely resolved." Tr. 210. Dr. Greenough also noted

23  -  OPINION AND ORDER

Nelson's panic attacks had subsided, but her improvement was
in part due to her social withdrawal within her parents' home
and her use of appropriate medication.  Tr. 211.  As noted,
Dr. Greenough concluded Nelson would need counseling to help her
create goals, to work on functional relationships, and to adjust
to a work environment.  She opined Nelson would be a candidate
for vocational rehabilitation, but she did not conclude Nelson
was ready for direct entry into the workforce.  Tr. 211-12.  She
also determined Nelson "will need more support and praise than
the average person and may find it hard to work in a situation
where this is not available."  Tr. 211.  The Court finds Dr.
Greenough's conclusions and the conclusions of other "acceptable"
and "not acceptable" medical sources in the record do not
contradict Yarwood's opinion.  The Court, therefore, concludes
the ALJ erred when he discredited Yarwood's opinion without
providing legally sufficient reasons supported by substantial
evidence in the record for doing so.

**B.  Gary Bredeweg.**

Bredeweg is a mental-health specialist who worked as
Nelson's clinical social worker in Linn County where Nelson
resides.  Tr. 392-95.  Consistent with the findings of Yarwood
and Dr. Greenough, Bredeweg notes Nelson's stability improved
while on medication for her bipolar disorder and opines Nelson's
stability is also the "result of the care given by her parents in

24  -  OPINION AND ORDER

a structured home environment and her medications."  Tr. 392.

Bredeweg, however, also states Nelson continues to suffer from

"depressive symptoms, particularly energy loss."  Tr. 392.

Bredeweg concludes:

> . . . . At this point, if she were to live on
> her own or with a roommate I doubt her
> current relative stability would be
> maintained.  So to [*sic*] I believe Amy would
> not be able to consistently function in a
> work environment that was not highly
> structured.
>      I base this in part on the difficulty
> she has in session communicating beyond basic
> considerations.  Amy seems to be thrown by
> questions that are beyond basic dimensions
> such as how her daily routines are going or
> who she is spending time with.  She struggles
> to expound when requested. . . .  I speculate
> she would struggle in a job with expectations
> beyond a very limited range or unexpectedly
> given.

Tr. 392.

The ALJ did not give Bredeweg's opinion great weight.  The

ALJ concluded, "I do not find Mr. Bredeweg's opinion particularly

persuasive, since the claimant has not attempted to live outside

a structured environment since ceasing her substance abuse and

attaining mental health stability."  Tr. 28.

The ALJ found Bredeweg's opinion was inconsistent with the

findings of Mental Health Specialist MacMillan, who noted

Nelson's "current mental status" as she presented on a single

visit on March 22, 2006.  Tr. 28, 379-82.  MacMillan noted

Nelson's presentation was cooperative and calm with flattened

25  -  OPINION AND ORDER

affect; her speech was normal, logical, and coherent, but she mumbled and was inaudible; her thought was normal with average intellect; her behavior was normal, but she had poor eye contact; her insight was poor, but her memory and reality contacts were normal; and she was oriented to time, place, person, and purpose. Tr. 379-80.  MacMillan diagnosed Nelson with bipolar disorder "evidenced by alternating periods of depression and mania (depressed mood, anhedonia, weight gain, hypersomnia, fatigue; grandiosity, decreased need for sleep, increased talkativeness, distractability, and increase in pleasurable activities) that interfere with her ability to keep a job."  Tr. 380-81.  Thus, MacMillan's findings and conclusions do not contradict Bredeweg's opinion.

On this record, therefore, the Court finds the ALJ erred when he discredited Bredeweg's opinion without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

In summary, the ALJ did not give legally sufficient reasons supported by substantial evidence in the record for rejecting Nelson's testimony, for discrediting the testimony of Tony Nelson or the statements of Gail Nelson, or for the little weight assigned to the opinions of Yarwood and Bredeweg.  When the ALJ does not give adequate reasons for rejecting medical opinions or lay testimony, a court credits the evidence as a matter of law.

*See Lester*, 81 F.3d at 834.  Based on this record, therefore, the Court credits such testimony, statements, and opinions.

The ALJ's failure to consider such evidence appropriately is not harmless error unless the reviewing court can conclude "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

At the hearing before the ALJ, Nelson's attorney examined the VE regarding Nelson's ability to perform work-related activities based on the functional limitations identified in the testimony, statements, and opinions of the "not acceptable" medical sources and the lay witnesses.  Tr. 453-55.  In a hypothetical posed to the VE, Nelson's attorney specifically included Nelson's inability to interact with the public or her co-workers and her need for consistent instruction, supervision, and encouragement to complete job tasks.  Tr. 453-55.  The VE responded Nelson's inability to interact with co-workers would reduce the numbers of jobs available by an unspecified number, and her need for consistent supervision and prompting would make her unable to maintain competitive employment.  Tr. 454-55.  The VE testified encouragement as described is usually reserved for a paid job coach in a "supported employment situation."  Tr. 455.

Thus, in light of the testimony of the VE, the Court concludes a "reasonable ALJ" could find Nelson disabled on

the basis of the testimony and statements of these lay witnesses
and the opinions of Yarwood and Bredeweg.  *See Stout*, 454 F.3d at
1056.  The ALJ's improper discrediting of the testimony,
statements, and opinions of Nelson, Tony Nelson, Gail Nelson,
Yarwood, and Bredeweg, therefore, is not harmless error.

**III. Additional Evidence Submitted to the Appeals Council.**

Nelson contends this Court should also consider the
additional opinion of Gary E. Nielsen, Ph.D, which Nelson
submitted to the Appeals Council with her request for review of
the ALJ's decision.  Tr. 6-9, 396-401.  The Appeals Council noted
in its denial of Nelson's request for review that it made Dr.
Nielsen's opinion a part of the administrative record.  Tr. 9.
As noted, however, the Appeals Council denied Nelson's request
for review.

The Court may properly evaluate all of the evidence in the
record, including new evidence submitted to the Appeals Council
after the ALJ has issued his opinion.  *Ramirez v. Shalala*, 8 F.3d
1449, 1452 (9th Cir. 1993).  *See also* 20 C.F.R. § 404.970(b)(the
Appeals Council shall consider new relevant evidence on review of
the ALJ's opinion).  In regard to such evidence, the Ninth
Circuit held:

> While we properly may consider the additional
> evidence presented to the Appeals Council in
> determining whether the Commissioner's denial
> of benefits is supported by substantial
> evidence, it is another matter to hold on the

> basis of evidence that the ALJ has had no
> opportunity to evaluate that Appellant is
> entitled to benefits as a matter of law. The
> appropriate remedy in this situation is to
> remand this case to the ALJ; the ALJ may then
> consider, the Commissioner then may seek to
> rebut and the VE then may answer questions
> with respect to the additional evidence.

*Harman v. Apfel*, 211 F3d 1172, 1180 (9th Cir. 2000).

Dr. Nielsen performed a comprehensive review of Nelson's medical and psychiatric records and performed a battery of eleven tests to assess Nelson's mental capacity. Tr. 396-401. Dr. Nielsen's tests revealed Nelson

> simply does not comprehend many social
> situations and her understanding and judgment
> is extremely poor. While her short term
> memory and vocabulary appear to be much
> higher, enough so that she appears to be
> functioning at a higher level than is in fact
> the case. One could also conclude that she
> is seriously lacking in common sense. . . .
> her ability to analyze practical and social
> situations is very low.

Tr. 401. Dr. Nielsen diagnosed Nelson with major depressive disorder, recurrent; anxiety disorder NOS; sexual abuse of child as victim; and borderline intellectual functioning. Tr. 401. His tests revealed Nelson has a full-scale IQ of 73, which is three points above the cut-off for mental retardation. Tr. 400. Dr. Nielsen also found Nelson's depression was "still significant despite her denial," which results in "feelings of inadequacy, lack of self confidence, self depreciation, pessimism about the future . . . . Such individuals are socially reserved and rather

introverted . . . and tend to withdraw and isolate themselves when in conflict or under stress."  Tr. 400.

Dr. Nielsen's report further underscores Nelson's inability to perform work-related functions on a consistent basis due to the symptoms of her disorder such as social unresponsiveness, the need for detailed instructions and consistent oversight to do basic activities, the increased occurrence of manic-depressive symptoms in stressful situations outside of the safety and comfort of her home and the care of her parents, and her inability to remember and follow basic instructions.  On the basis of his examination and testing, Dr. Nielsen concluded Nelson "will never be able to function in a truly independent way as an adult."  Tr. 401.

As noted, the Court has credited the testimony, statements, and opinions of Nelson, Tony Nelson, Gail Nelson, Yarwood, and Bredeweg.  The Court finds Dr. Nielsen's report merely supports the conclusions of Yarwood and Bredeweg as well as the lay-witness testimony and statements by Nelson and her parents.  Although the Court has considered Dr. Nielen's report in its evaluation of the record, it has not determined Nelson is disabled "on the basis of evidence that the ALJ had no opportunity to evaluate."  *See Harman*, 211 F.3d at 1180.


## REMAND


30  -  OPINION AND ORDER

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

As noted, the Court has concluded, on the basis of the credited testimony, statements, opinions, and in light of the testimony of the VE, the record is complete regarding Nelson's impairments and her resulting functional limitations. Although

31  -  OPINION AND ORDER

Dr. Nielsen's report only became part of the record after the ALJ issued his opinion and when the matter went before the Appeals Council, the Court's conclusion that the ALJ erred when he failed to provide legally sufficient reasons for discrediting these statements, testimony, and opinions is not made on the basis of Dr. Nielsen's report.  In any event, Dr. Nielsen's report does not contradict the record that was before the ALJ but, in fact, bolsters the opinions in the record.  On this record, therefore, the Court remands this matter for the calculation and award of benefits because further proceedings would be futile.

### CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 19th day of February, 2008.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

32  -  OPINION AND ORDER